# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF NEW YORK

JEDADIAH C.,

Plaintiff,

v.                                          5:21-CV-205
                                            (ATB)

COMMISSIONER OF SOCIAL SECURITY,

Defendant.

KIMBERLY A. SLIMBAUGH, ESQ., for Plaintiff
LOUIS JOHN GEORGE, Special Asst. U.S. Attorney for Defendant

ANDREW T. BAXTER, U.S. Magistrate Judge

## MEMORANDUM-DECISION and ORDER

This matter was referred to me, for all proceedings and entry of a final judgment, pursuant to the Social Security Pilot Program, N.D.N.Y. General Order No. 18, and in accordance with the provisions of 28 U.S.C. § 636(c), Fed. R. Civ. P. 73, N.D.N.Y. Local Rule 73.1, and the consent of the parties. (Dkt. Nos. 4, 6).

## I. PROCEDURAL HISTORY

On November 3, 2018, plaintiff protectively filed a Title II application for Disability Insurance Benefits, alleging disability beginning June 9, 2017. (Administrative Transcript ("T.") 165-68, 175-82). The plaintiff's claim was administratively denied on April 22, 2019. (T. 102-05). Plaintiff filed a timely written request for reconsideration on May 14, 2019 (T. 106), which was denied on July 9, 2019 after further administrative review (T. 107-14). Plaintiff timely filed a request for hearing before an Administrative Law Judge ("ALJ") on July 30, 2019. (T. 115-16).

A hearing was conducted before ALJ Bruce S. Fein on March 5, 2020, during which plaintiff and Vocational Expert ("VE") Malisha McPhaul testified.  (T. 26-54).  On March 30, 2020, ALJ Fein issued an order denying plaintiff's claim (T. 11-18), which became the final decision of the Commissioner when the Appeals Council denied plaintiff's request for review on January 6, 2021 (T. 1-7).

## II.   GENERALLY APPLICABLE LAW

### A.   Disability Standard

To be considered disabled, a plaintiff seeking disability insurance benefits or SSI disability benefits must establish that he is "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months . . . ."  42 U.S.C. § 1382c(a)(3)(A).  In addition, the plaintiff's

> physical or mental impairment or impairments [must be] of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. § 1382c(a)(3)(B).

The Commissioner uses a five-step process, set forth in 20 C.F.R. sections 404.1520 and 416.920, to evaluate disability insurance and SSI disability claims.

> First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity.  If he is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work

activities.  If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which meets or equals the criteria of an impairment listed in Appendix 1 of the regulations.  If the claimant has such an impairment, the [Commissioner] will consider him disabled without considering vocational factors such as age, education, and work experience . . . .  Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work.  Finally, if the claimant is unable to perform his past work, the [Commissioner] then determines whether there is other work which the claimant can perform.

*Berry v. Schweiker*, 675 F.2d 464, 467 (2d Cir. 1982); *see* 20 C.F.R. §§ 404.1520, 416.920.  The plaintiff has the burden of establishing disability at the first four steps.  However, if the plaintiff establishes that her impairment prevents her from performing her past work, the burden then shifts to the Commissioner to prove the final step.  *Id.*

### B. Scope of Review

In reviewing a final decision of the Commissioner, a court must determine whether the correct legal standards were applied and whether substantial evidence supported the decision.  *Selian v. Astrue*, 708 F.3d 409, 417 (2d Cir. 2013); *Brault v. Soc. Sec. Admin, Comm'r*, 683 F.3d 443, 448 (2d Cir. 2012); 42 U.S.C. § 405(g)).  Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012).  It must be "more than a scintilla" of evidence scattered throughout the administrative record.  *Id.*  However, this standard is a very deferential standard of review " – even more so than the 'clearly erroneous standard.'"  *Brault*, 683 F.3d at 448.  "To determine on appeal whether an ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining the evidence from

3

both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." *Williams on behalf of Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988).  However, a reviewing court may not substitute its interpretation of the administrative record for that of the Commissioner, if the record contains substantial support for the ALJ's decision.  *Id*.  *See also Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982).

An ALJ is not required to explicitly analyze every piece of conflicting evidence in the record.  *See, e.g., Mongeur v. Heckler*, 722 F.2d 1033, 1040 (2d Cir. 1983); *Miles v. Harris*, 645 F.2d 122, 124 (2d Cir. 1981) (we are unwilling to require an ALJ explicitly to reconcile every conflicting shred of medical testimony).  However, the ALJ cannot "'pick and choose' evidence in the record that supports his conclusions." *Cruz v. Barnhart*, 343 F. Supp. 2d 218, 224 (S.D.N.Y. 2004); *Fuller v. Astrue*, No. 09-CV-6279, 2010 WL 5072112, at *6 (W.D.N.Y. Dec. 6, 2010).

## III.   **FACTS**

Plaintiff was born in 1981 and was 39 years old on the date of the administrative hearing.  (T. 39, 55).  He is married and resides with his wife and two children.  (T. 31). Plaintiff has an associate degree in Information Technology, but never worked in that field.  (T. 31, 45).  Plaintiff's prior employment included work as an auto mechanic, assistant manager/lead auto technician, oil change technician, and saw operator, all performed at the heavy exertional level.  (T. 32-38).

Plaintiff first injured his back moving a refrigerator down a flight of stairs in 2012, resulting in L4-45 lumbar discectomy/nerve root decompression surgery on June 5, 2012.  (T. 604, 714).  He re-injured his back while working at Kost Tire in late 2014,

resulting in a second surgery–an L3-L4 left hemilaminectomy for nerve root decompression–on January 29, 2015.  (T. 383-84, 714).  Plaintiff again returned to work, at Mavis Tire.  He suffered another back injury in mid-2017, which resulted in his treating surgeon taking him out of work and an eventual third surgery–a left L4 nerve root decompression–on July 27, 2017.  (T. 405, 714).  Over the following eight months, plaintiff remained out of work and, despite physical therapy, reported continuing back and hip pain, as well as cramping and numbness in his left lower leg and ankle.  (Pl.'s Br. at 4 (citing the record), Dkt. No. 11).  After several MRIs and further evaluation by his surgeon, plaintiff had another left L3-L4 nerve root decompression on April 19, 2018–his fourth back surgery.  (*Id.* at 4-5).

Following his last surgery, through the time of the administrative hearing on March 5, 2020, plaintiff continued to be treated for low back pain; cramping, numbness, and tingling in his left leg and foot; and left foot drop.  During this period, his neurosurgeon, Dr. Ross R. Moquin, consistently opined that plaintiff could not return to work and generally stated that he had a 100% temporary impairment.  (*Id.* at 5-6 (citing the record)).  By February 2020, Dr. Moquin concluded that plaintiff had reached maximum medical improvement.  (T. 882).  The medical opinion evidence is discussed further below.

Plaintiff testified, during the March 2020 hearing, that he stopped working in June 2017 because of his back issues and follow-up surgeries.  (T. 38).  He described numbness from his waist down on his left side, "like it's asleep all the time [with] pins and needles."  (*Id.*).  He also experienced burning and throbbing pain in his left side, which shoots down from his back to his toes.  (T. 38).

Plaintiff periodically engaged in physical therapy, which did not help his pain. (T. 39). He was referred to pain management, and the doctor offered him spinal injections, but plaintiff was afraid to have the injections because the risks presented included never walking again. (T. 39). He sometimes took Gabapentin, but did not think that it helped with his pain, and was also prescribed Ibuprofen. (T. 40). Because of his left foot drop, plaintiff wears a brace foot to help keep his foot from slapping on the ground. (T. 40-41). He also has a back brace, and tried using a TENS unit, which he borrowed from a friend, but "it didn't seem to make any difference." (T. 45). Dr. Moquin, plaintiff's surgeon, is the only doctor plaintiff continued to see on a regular basis, every three months. (T. 46).

Plaintiff testified that it was almost impossible for him to bend straight over; that he could kneel, but usually needed to grab something to get up; and that he could turn at the waist, as long as he was not carrying any weight. (T. 41). He stated that he was able to sit for ten to 15 minutes and stand for ten minutes before he needed to change positions. (T. 41-42). Plaintiff testified that he could lift five to ten pounds, "maybe," and could reach and grab a dish or a plate, but not a gallon of fluid above his head. (T. 42).

At the hearing, plaintiff stated that he was not able to "do much anymore" in the way of physical activity because of his back. (T. 41). He could drive for 20 to 30 minutes before becoming numb and needing to stretch out. (T. 42-43). He helped take care of his baby daughter, but because she currently weighed 38 pounds, he tried not to lift her, for fear of having his leg give out and falling with her. (T. 43-44). He could make light meals for his children and helped with the grocery shopping, but his wife

did the laundry, cleaning, and outdoor work.  (T. 43-44).  Plaintiff testified that he
wants to go back to school to retrain and was working with Access VR, but could not
start retraining because his surgeon opined he had a 100% impairment.  (T. 45, 46).

## IV.   <u>THE ALJ'S DECISION</u>

The ALJ determined that plaintiff met the insured status requirements for Title II
benefits through December 31, 2022 and found that plaintiff had not engaged in
substantial gainful activity since his alleged onset date of June 9, 2017.  (T. 13).  At
step two of the sequential evaluation, the ALJ concluded that plaintiff had the
following severe impairments: "lumbar radiculopathy, status post laminectomy at L3-5
and hemilaminectomy at L4-5 with nerve root decompressions, and left foot drop."  (T.
12).  At step three, the ALJ determined that plaintiff did not have an impairment or
combination of impairments that met or medically equaled the severity of a Listed
Impairment.  (T. 13-14).

At step four, the ALJ found that plaintiff had the RFC to perform less than the
full range of sedentary work, as defined in 20 C.F.R. § 404.1567(a).  (T. 14-17).
Specifically, he concluded that plaintiff:

> can perform all postural activities occasionally, including occasional
> operation of left foot controls and no climbing of ropes, ladders, or
> scaffolds. He would require an allowance to alternate between sitting and
> standing positions at 15-minute intervals throughout the day. He should
> avoid concentrated exposure to unprotected heights.

(T. 14.)

In making the RFC determination, the ALJ stated that he considered opinion
evidence and prior administrative medical findings pursuant to 20 C.F.R. § 404.1520c.
(T. 14).  The ALJ found that plaintiff's medically determinable impairments could

reasonably be expected to produce some of his alleged symptoms, but that plaintiff's statements regarding the intensity, persistence, and limiting effects of those symptoms were not entirely consistent with the medical evidence and other evidence in the record. (T. 15).

Next, the ALJ determined that plaintiff was unable to perform his past relevant work.  (T. 17.)  The ALJ relied upon the VE testimony, and found that "considering the [plaintiff]'s age, education, work experience, and residual functional capacity, the [plaintiff] is capable of making a successful adjustment to other work that exists in significant numbers in the national economy."  (T. 18).  Accordingly, the ALJ ruled that plaintiff was not disabled from the alleged onset date of June 9, 2017, through the date of the ALJ's decision.  (T. 18).

## V.   **ISSUES IN CONTENTION**

Plaintiff challenged the ALJ's decision on the following grounds:

(1)  The ALJ erred in failing to evaluate the opinion of plaintiff's treating surgeon, Dr. Ross R. Moquin;

(2)  The ALJ improperly assessed the opinion evidence from the Agency's Consultative Examiner and Michael Radley, M.D.;

(3)  The ALJ's step five finding is not supported by substantial evidence; and

(4)  The ALJ erred by not considering the State Agency Medical Consultants' findings that the plaintiff's statements about his symptoms were supported by the objective medical evidence.

(Plaintiff's Brief ("Pl.'s Br.") at I, Dkt. No. 11 at 2).  Defendant contends that the ALJ's failure to discuss the opinons of Dr. Moquin constituted harmless error, and that substantial evidence supports the ALJ's evaluation of the other medical opinion

evidence, the ALJ's RFC findings, and ultimate conclusion that plaintiff was not disabled.  (Defendant's Brief ("Def.'s Br.") at I-ii, Dkt. No. 12 at 2-3).  For the reasons stated below, this court finds that the ALJ's failure to assess the medical opinion and other evidence from Dr. Moquin constituted prejudicial error, which taints the ALJ's RFC findings and his ultimate non-disability determination.  Accordingly, the court will order a remand pursuant to sentence four of 42 U.S.C. § 405(g).

## DISCUSSION

## VI.  RFC/EVALUATING MEDICAL EVIDENCE

### A.  Legal Standards

#### 1.  RFC

RFC is "what [the] individual can still do despite his or her limitations. Ordinarily, RFC is the individual's maximum remaining ability to do sustained work activities in an ordinary work setting on a regular and continuing basis. . . ."  A "regular and continuing basis" means eight hours a day, for five days a week, or an equivalent work schedule.  *Balles v. Astrue*, No. 3:11-CV-1386 (MAD), 2013 WL 252970, at *2 (N.D.N.Y. Jan. 23, 2013) (citing *Melville v. Apfel*, 198 F.3d 45, 52 (2d Cir. 1999) (quoting SSR 96-8p, 1996 WL 374184, at *2)); *Babcock v. Berryhill,* No. 5:17-CV-00580 (BKS), 2018 WL 4347795, at *12-13 (N.D.N.Y. Sept. 12, 2018); *Tankisi v. Comm'r of Soc. Sec.*, 521 F. App'x 29, 33 (2d Cir. 2013); *Stephens v. Colvin*, 200 F. Supp. 3d 349, 361 (N.D.N.Y. 2016).

In rendering an RFC determination, the ALJ must consider objective medical facts, diagnoses, and medical opinions based on such facts, as well as a plaintiff's

subjective symptoms, including pain and descriptions of other limitations.  20 C.F.R.

§§ 404.1545, 416.945.  *See Martone v. Apfel*, 70 F. Supp. 2d 145, 150 (N.D.N.Y. 1999)

(citing *LaPorta v. Bowen*, 737 F. Supp. 180, 183 (N.D.N.Y. 1990)); *Kirah D. v.*

*Berryhill*, No. 3:18-CV-0110 (CFH), 2019 WL 587459, at *8 (N.D.N.Y. Feb 13, 2019);

*Genier v. Astrue,* 606 F.3d 46, 49 (2d Cir. 2010).  An ALJ must specify the functions

plaintiff is capable of performing, and may not simply make conclusory statements

regarding a plaintiff's capacities.  *Roat v. Barnhart*, 717 F. Supp. 2d 241, 267

(N.D.N.Y. 2010); *Martone v. Apfel*, 70 F. Supp. 2d at 150 (citing *Ferraris v. Heckler*,

728 F.2d 582, 588 (2d Cir. 1984); *LaPorta v. Bowen*, 737 F. Supp. at 183, *Stephens v.*

*Colvin,* 200 F. Supp. 3d 349, 361 (N.D.N.Y. 2016); *Whittaker v. Comm'r of Soc. Sec.*,

307 F. Supp. 2d 430, 440 (N.D.N.Y. 2004).  The RFC assessment must also include a

narrative discussion, describing how the evidence supports the ALJ's conclusions,

citing specific medical facts, and non-medical evidence.  *Natashia R. v. Berryhill*, No.

3:17-CV-01266 (TWD), 2019 WL 1260049, at *11 (N.D.N.Y. Mar. 19, 2019) (citing

SSR 96-8p, 1996 WL 374184, at *7).

The full range of sedentary work involves lifting no more than ten pounds at a

time and occasionally lifting or carrying articles like docket files, ledgers, and small

tools.  20 C.F.R. §§ 404.1567(a), 416.967(a); SSR 96-9p, 1996 WL 374185, at *3.  Jobs

are sedentary if walking and standing are required occasionally and other sedentary

criteria are met.  "Occasionally" means occurring from very little up to one-third of the

time, and would generally total no more than about two hours of an eight-hour

workday.  Sitting would generally total about six hours of an eight-hour workday.  SSR

96-9p, 1996 WL 374185, at *3.

" . . . [T]he concept of sedentary work contemplates substantial sitting . . ., [and] alternating between sitting and standing may not be within the concept of sedentary work." *Ferraris v. Heckler*, 728 F.2d 582, 587 (2d Cir. 1984) (citations omitted).  An "individual [who] may be able to sit for a time, but must then get up and stand or walk for awhile before returning to sitting . . . is not functionally capable of doing . . . the prolonged sitting contemplated in the definition of sedentary work. . . .  Unskilled types of jobs are particularly structured so that a person cannot ordinarily sit or stand at will." SSR 83-12, 1983 WL 31253, at *4.

## 2.    Evaluation of Medical Opinion Evidence

The regulations regarding the evaluation of medical evidence have been amended for claims filed after March 27, 2017, and several of the prior Social Security Rulings, including SSR 96-2p, have been rescinded.  According to the new regulations, the Commissioner "will no longer give any specific evidentiary weight to medical opinions; this includes giving controlling weight to any medical opinion." *Revisions to Rules Regarding the Evaluation of Medical Evidence* ("*Revisions to Rules*"), 2017 WL 168819, 82 Fed. Reg. 5844, at 5867-68 (Jan. 18, 2017), *see* 20 C.F.R. §§ 404.1520c(a), 416.920c(a).  Instead, the Commissioner must consider all medical opinions and "evaluate their persuasiveness" based on the following five factors: supportability; consistency; relationship with the claimant; specialization; and "other factors."  20 C.F.R. §§ 404.1520c(a)-(c), 416.920c(a)-(c).

Although the new regulations eliminate the perceived hierarchy of medical

11

sources, deference to specific medical opinions, and assigning "weight" to a medical opinion, the ALJ must still "articulate how [he or she] considered the medical opinions" and "how persuasive [he or she] find[s] all of the medical opinions." *Id.* at §§ 404.1520c(a) and (b)(1), 416.920c(a) and (b)(1).  The two "most important factors for determining the persuasiveness of medical opinions are consistency and supportability," which are the "same factors" that formed the foundation of the treating source rule. *Revisions to Rules*, 82 Fed. Reg. 5844-01 at 5853.  An ALJ is specifically required to "explain how [he or she] considered the supportability and consistency factors" for a medical opinion.  20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2).

With respect to "supportability," the new regulations provide that "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be." *Id.* at §§ 404.1520c(c)(1), 416.920c(c)(1).  The regulations provide that with respect to "consistency," "[t]he more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be." *Id.* at §§ 404.1520c(c)(2), 416.920c(c)(2).

Under the new regulations an ALJ must consider, but need not explicitly discuss, the three remaining factors in determining the persuasiveness of a medical source's opinion. *Id.* at §§ 404.1520c(b)(2), 416.920c(b)(2).  However, where the ALJ has

found two or more medical opinions to be equally well supported and consistent with the record, but not exactly the same, the ALJ must articulate how he or she considered those factors contained in paragraphs (c)(3) through (c)(5).  *Id.* at §§ 404.1520c(b)(3), 416.920c(b)(3).

### B.      Summary of Medical Opinion Evidence

In connection with his claims for Workers Compensation and for Title II benefits, plaintiff was examined by two consulting physicians who issued reports addressing his functional abilities.  Two state agency consulting physicians also reviewed some of plaintiff's medical records and opined about his physical limitations, without examining him.  Thereafter, on January 2, 2020, a physical therapist conducted a functional capacity evaluation ("FCE") of plaintiff and issued a detailed report.  On February 4, 2020, plaintiff's treating surgeon, Dr. Moquin prepared a report including his opinons regarding the extent of plaintiff's physical impairments.  The ALJ evaluated and found "persuasive" the reports of the consulting physicians; briefly discussed, and found "less persuasive" the physical therapist's FCE report; and failed to address, or even mention the report of Dr. Moquin.

### 1.      Consultative Examiner Dr. Kalyani Ganesh

Dr. Kalyani Ganesh performed a consultative physical examination of plaintiff on February 28, 2019.  (T. 761-64).  Plaintiff reported a history of constant, moderate to severe, sharp or aching pain in his lower back, as well as numbness from the base of his spine to his left leg and toes.  (T. 761).  He stated that the pain was aggravated by most activities, including too much sitting or standing.  Dr. Ganesh noted that plaintiff had

four back surgeries and, that physical therapy and Chiropractic treatment "did not help." (T. 761).

During the examination, plaintiff displayed a limp favoring the left and an inability to walk on heels and toes. He used an ankle foot orthosis ("AFO") brace for his left foot drop. He received assistance from his wife in getting on and off the examination table, but had no difficulties changing clothes or rising from his chair. (T. 762).

Plaintiff displayed decreased flexion, extension and rotary movement in his lumbar spine, reduced flexion in his left knee, and an unstable left ankle. Plaintiff showed a full range of motion in his cervical spine and other joints and the straight leg raise test was negative bilaterally. He had decreased pinprick sensation and reduced strength (3/5) in his left leg, and atrophy of his left calf. (T. 763).

Based on this examination, Dr. Patel concluded that plaintiff had a guarded prognosis, with a diagnosis of chronic lower back pain with radiculopathy and left foot drop. She opined that plaintiff had no limitation to sitting or standing, moderate limitations to walking and climbing, and severe limitations for lifting, carrying, pushing, pulling, and bending. (T. 763). The ALJ found Dr. Patel's opinion to be "persuasive," because it was "rendered after a thorough examination . . . by a physician with extensive program and professional expertise, and it is generally consistent with the longitudinal record of treatment." (T. 16).

### 2.   Independent Medical Examiner Michael G. Radley, M.D.

Neurosurgeon Michael Radley, M.D., performed independent medical

14

examinations of plaintiff, in connection with his Workers Compensation case, on June 22, 2017; December 13, 2017; December 5, 2018; and July 17, 2019.  Dr. Radley issued reports which, among other things, generally recommended approval of surgeries and other treatment proposed by plaintiff's surgeon, Dr. Moquin.  (T. 327-34, 351-59, 743-57, 839-850).[1]  In December 2017 and December 2018, Dr. Radley opined that plaintiff could only perform a sedentary job, with no lifting over 10 pounds, and would have to avoid repetitive twisting and bending at the waist, as well as over the shoulder level work, and would need the liberal ability to change positions.  (T. 16, 358, 753).

Dr. Radley concluded, in July 2019, that plaintiff "has reached the endpoint in treatment."  (T. 844).  He opined that plaintiff could "perform [light] work, exerting up to 20 pounds of force occasionally and/or up to 10 pounds of force frequently and/or a negligible amount of force constantly to move objects."  (T. 16, 849, 850).  In the same assessment, Dr. Radley further stated that plaintiff could occasionally reach overhead and occasionally reach at/or below shoulder level.  (T. 849).[2]  The ALJ found Dr. Radley's opinion "persuasive," as it "was rendered after multiple physical examinations of [plaintiff] and reviews of medical records from his Workers Compensation Board file."  (T. 16).

### 3.    State Agency Medical Consultants Waldman and Siddiqui

Based on medical records then available, but without examining plaintiff, state

---

[1] On February 23, 2018, Dr. Radley also issued an addendum to his December 2017 report, without a further examination of plaintiff.  (T. 347-50).

[2] Dr. Radley also opined that plaintiff could "occasionally" engage in sitting, standing, walking, kneeling, and bending/stooping/squatting.  (T. 849).

agency medical consultant, K. Waldman, M.D., produced a physical RFC assessment on April 22, 2019.  (T. 16, 55-66).  He opined that the plaintiff could lift and carry up to ten pounds occasionally and less than ten pounds frequently.  (T. 62).  Dr. Waldman found that plaintiff could stand and/or walk for two hours in an eight-hour workday with normal breaks.  Plaintiff could sit for about six hours in an eight-hour workday with normal breaks.  (T. 62).  He could occasionally balance, stoop, kneel, crouch, crawl, and climb ramps, stairs, ladders, ropes, and scaffolds.  (T. 63).  Plaintiff could also frequently reach overhead bilaterally.  (T. 63).

On reconsideration, on July 9, 2019, state agency medical consultant, S. Siddiqui, M.D., who had access to plaintiff's more recent medical records, made essentially the same findings as Dr. Waldman.  (T. 17, 68-80).  The ALJ found these assessments "persuasive" because "[t]hey were rendered after thorough reviews of the entirety of the evidence by physicians with extensive program and professional expertise . . . [and] are consistent with the opinion of the examining consultative physician . . . ."  (T. 17). Both of these consulting doctors found that plaintiff's "statements about the intensity, persistence, and functionally limiting effects of the symptoms [were] substantiated by the objective medical evidence alone."  (T. 61, 74).  However, without attempting to reconcile his differing conclusion, the ALJ found that plaintiff's "statements concerning the intensity, persistence, and limiting effects of [his] symptoms are not entirely consistent with the medical evidence and other evidence in the record."  (T. 15).

### 4.   Physical Therapy Functional Capacity Evaluation

On January 2, 2020, Physical Therapist ("PT") Kevin Nellis issued a detailed

16

report about his Quantified Functional Capacity Evaluation ("FCE") of plaintiff.  (T. 854-880).  PT Nellis determined, after comprehensive physical testing of plaintiff, that he could rarely sit, stand, walk or operate foot controls.  He could never bend, squat, and crawl; and could occasionally climb steps, balance, and reach.  (T. 854).  Plaintiff could occasionally lift five pounds at a height of 30-40 inches and 2.5 pounds at 30-60 inches.  He could never lift off the floor or overhead.  (T. 854).  Plaintiff could occasionally carry two to five pounds "best when he carries in one hand."  (T. 855).  The examiner concluded that plaintiff could not return to work because his lifting capability did not place him in any DOT strength category.  (T. 854-55, 859, 861).

The ALJ tersely dismissed the physical therapy FCE as "less persuasive."  The ALJ stated: "The sum of the evidence illustrates that the claimant has at least somewhat greater abilities than those opined."  (T. 17).

### 5.   Treating Surgeon, Dr. Moquin

Neurosurgeon Ross R. Moquin, M.D., started treating plaintiff in 2012, performing each of his four surgeries and continuing to conduct follow-up assessments of plaintiff through at least December 16, 2019.  (Pl.'s Br. at 3-6 (citing the record); T. 46 (plaintiff's 3/5/2020 hearing testimony that he continues to treat with Dr. Moquin every three months).  Dr. Moquin performed two of the surgeries (on July 27, 2017 and April 19, 2018), and personally conducted at least eight follow-up examinations of plaintiff after his alleged onset date in June 2017.  (T. 379-381 (1/18/2018 follow-up examination by Dr. Moquin); 388-391 (2/13/2018 follow-up); 738-40 (7/31/2018 follow-up); 770-72 (11/19/2018 follow-up); T. 766-69 (3/4/2019 follow-up); 831-834

17

(6/10/2019 follow-up); 825-828 (9/16/2019 follow-up); 821-824 (12/16/2019 follow-up).

On February 4, 2020, Dr. Moquin issued a Doctor's Report of MMI/Permanent Impairment, consistent with his numerous prior opinions that plaintiff had been 100% impaired following examinations. (T. 881-85).[3] Dr. Moquin reported that plaintiff had reached maximum medical improvement ("MMI") as of November 19, 2018. (T. 882). He opined that plaintiff could occasionally lift, carry, push or pull only five pounds. Plaintiff could rarely sit, stand or walk. He could occasionally reach overhead or at or below shoulder level. He could never kneel, bend, stoop, or squat. (T. 884). Dr. Moquin opined plaintiff was incapable of performing work at even the sedentary exertional level. (T. 884 (plaintiff "does not meet above criteria" for work at any exertional level)). The ALJ did not mention, much less assess, the opinions of Dr. Moquin–plaintiff's treating surgeon for almost seven years.

### C.    Analysis

The Commissioner argues that the medical opinions of examining consultants, Dr. Ganesh and Dr. Radley, as interpreted by the non-examining state agency medical consultants, Dr. Waldman and Dr. Siddiqui, provided substantial evidence supporting the ALJ's RFC findings and his ultimate determination that plaintiff was not disabled. (Pl.'s Br. at 1-2, 5-6, 9-15). The Commissioner further argues that the ALJ's complete

---

[3] In his above-cited reports on his follow-up examinations of plaintiff between January 2018 and December 2019, Dr. Moquin opined that plaintiff had a 75% temporary impairment on 1/18/2018 and 2/13/2018 (T. 381, 391), and thereafter stated that plaintiff had a 100% temporary impairment (T. 722, 740, 768, 823, 828, 834).

failure to address the medical opinions of plaintiff's treating surgeon, Dr. Moquin, constituted harmless error because the ALJ did consider and discount the similarly restrictive opinions of PT Nellis, indicating that consideration of Dr. Moquin's opinion would not have changed the ALJ's findings.  (Pl.'s Br. at 1, 7-9). There are a number of fatal flaws with this defense of the ALJ's consideration of the medical opinion evidence.

"'Although the new regulations eliminate the perceived hierarchy of medical sources, deference to specific medical opinions, and assigning 'weight' to a medical opinion, the ALJ must still articulate how [he or she] considered the medical opinions and how persuasive [he or she] find[s] all of the medical opinions[,]'" focusing on the "supportability" and "consistency" factors. *Jacqueline L. v. Comm'r of Soc. Sec.*, 515 F. Supp. 3d 2, 8 (W.D.N.Y. 2021) (citing *Andrew G. v. Comm'r of Soc. Sec.*, No. 3:19-CV-0942 (ML), 2020 WL 5848776, at *5 (N.D.N.Y. Oct. 1, 2020)).  The ALJ utterly failed in this obligation, in that he did not mention, much less evaluate, the opinions of Dr. Moquin.

The ALJ's failure to address Dr. Moquin's opinions is all the more prejudicial because of the his unique position in this case as the surgeon who consistently treated plaintiff for more than seven years.  The new regulations governing the evaluation of medical opinion evidence "cannot be read as a blank check giving ALJs permission to rely solely on agency consultants while dismissing treating physicians in a conclusory manner." *Dany Z. v. Saul*, No. 2:19-CV-217, 2021 WL 1232641, at *12 (D. Vt. Mar. 31, 2021).  "Even though ALJs are no longer directed to afford controlling weight to

treating source opinions–no matter how well supported and consistent with the record they may be–the regulations still recognize the 'foundational nature' of the observations of treating sources, and 'consistency with those observations is a factor in determining the value of any [treating source's] opinion.'" *Shawn H. v. Comm'r of Soc. Sec.*, No. 2:19-CV-113, 2020 WL 3969879, at *6 (D. Vt. July 14, 2020) (*quoting Barrett v. Berryhill*, 906 F.3d 340, 343 (5th Cir. 2018)).  In this case, the ALJ did not merely dismiss "in a conclusory manner," Dr. Moquin's opinions; he ignored them completely. The ALJ could not fairly evaluate the "consistency" of the opinions of the various consulting physicians without considering the contrary opinions of plaintiff's primary treating provider.  This is particularly true because the opinions of all of the consulting physicians, upon whom the ALJ relied, are dated well after Dr. Moquin's ultimate opinion was issued, and after at least two of his follow-up examinations of the plaintiff.[4]  *See, e.g., Shawn H.*, 2020 WL 3969879, at *8 (remanding where ALJ relied upon opinion of non-examining consultant who had no opportunity to review treating source opinions that described greater restrictions); *Danette Z. v. Comm'r of Soc. Sec.*, No. 1:19-CV-1273 (ATB), 2020 WL 6700310, at *8 (N.D.N.Y. Nov. 13, 2020) (remanding, in part, due to non-examining consultant's inability to review later treating source opinion).[5]

---

[4] As discussed above, Dr. Ganesh's report was issued on 2/28/2019; Dr. Waldman's report was dated 4/22/2019; Dr. Siddiqui's report was issued 7/9/2019; and the opinions of  Dr. Radley upon which the ALJ relied were dated 12/13/2017, 12/5/2018, and 7/17/2019.  Dr. Moquin conducted follow-up examinations of plaintiff on, *inter alia*, 3/4/2019, 6/10/2019, 9/15/2019, and 12/16/2019, and his final report was dated 2/4/2020.

[5] The consulting physicians also did not have access to, and could not consider, the FCE of PT Nellis, dated 1/2/2020.

Defense counsel tries to defend the ALJ's failure to consider Dr. Moquin's opinions, nunc pro tunc, by noting that Dr. Moquin's "Report of MMI/Permanent Impairment" was a check box form.  However, the Second Circuit recently clarified that an opinion by a treating provider should not be discounted solely because it is provided on a check-box form.  *Kimberly W. v. Kijakazi*, No. 6:20-CV-925 (DJS), 2022 WL 561665, at *4 (N.D.N.Y. Feb. 24, 2022) (citing *Colgan v. Kijakazi*, 22 F.4th 353, 360-61 (2d Cir. 2022)).  Rather, "the nature of an ALJ's inquiry in disability factfinding turns on the substance of the medical opinion at issue–not its form–and ultimately whether there is reasonable evidence in the record that supports the conclusions drawn by the medical expert[.]"  *Colgan*, 22 F.4th at 361.  In addition to ignoring Dr. Moquin's final report, the ALJ also failed to address the substance of the surgeon's objective medical findings in his numerous reports of examinations of plaintiff after his alleged onset date, thereby failing to fairly evaluate the supportability of Dr. Moquin's ultimate opinions.

Finally, the fact that the ALJ addressed, in conclusory fashion, the opinions of PT Nellis, who found that plaintiff had limitations similar to those found by Dr. Moquin, does not render harmless the ALJ's error is failing to evaluate Dr. Moquin's opinions.  Notwithstanding the similarities in many of their findings, the conclusions of a physical therapist's Quantified Functional Capacity Evaluation cannot be properly assessed as substantially equivalent to the opinions of a neurosurgeon who treated plaintiff for years, particularly with respect to the applicable regulatory factors of relationship with the claimant and specialization.  Nor can the ALJ dispense with his

obligation to consider the consistency factor with respect medical opinions contrary to his findings by summarily discounting one such opinion, while ignoring other contrary medical opinion evidence, particularly from specialists with a long history of treatment of the plaintiff.

NP Nellis's FCE report documented detailed examination and testing of plaintiff's physical limitations, but the ALJ failed to consider the extent to which those objective medical observations supported the physical therapist's conclusions.  Instead, he summarily dismissed PT Nellis' opinions as "less persuasive" in light of "the sum of the evidence," while ignoring that his opinions were consistent with those of Dr. Moquin.  The court understands, as the defense brief argues, that the plaintiff did not focus on the deficiencies of the ALJ's analysis of PT Nellis' opinions.  However, the court cannot allow defendant to rely on the ALJ's cursory discounting of PT Nellis' FCE as an implicit rejection of Dr. Moquin's opinion that somehow satisfies the current regulatory requirements for the assessment of all medical significant opinions.

For all the foregoing reasons, the court concludes that the ALJ's failure to address or evaluate the opinion of Dr. Moquin constituted prejudicial error that tainted the ALJ's RFC findings and his ultimate conclusion that plaintiff was not disabled.  On that basis alone, a remand for further administrative proceedings is warranted.

## VII.   <u>NATURE OF REMAND</u>

Because remand is necessary for further administrative proceedings, this court need not address plaintiff's additional arguments.  See, e.g., *Bell v. Colvin*, No. 5:15-CV-01160, 2016 WL 7017395, at *10 (N.D.N.Y. Dec. 1, 2016) (declining to reach

arguments "devoted to the question whether substantial evidence supports various determinations made by [the] ALJ" where the court had already determined remand was warranted); *Morales v. Colvin*, No. 13-CV-6844, 2015 WL 2137776, at *28 (S.D.N.Y. May 4, 2015) (the court need not reach additional arguments regarding the ALJ's factual determinations "given that the ALJ's analysis may change on these points upon remand"). Nonetheless, the Commissioner would be imprudent to proceed on the assumption that the court found the plaintiff's other arguments with respect to the current evidence of record were without merit or need not be considered and addressed on remand.

"When there are gaps in the administrative record or the ALJ has applied an improper legal standard . . . remand to the Secretary for further development of the evidence" is generally appropriate.  *Parker v. Harris*, 626 F.2d 225, 235 (2d Cir. 1980). This court cannot conclude that "substantial evidence on the record as a whole indicates that the [plaintiff] is disabled[,]" and thus, I cannot recommend a remand solely for the determination of benefits.  *See Bush v. Shalala*, 94 F.3d 40, 46 (2d Cir. 1996).

**WHEREFORE**, based on the findings above, it is

**ORDERED**, that the decision of the Commissioner is **REVERSED** and this case **REMANDED**, pursuant to sentence four of 42 U.S.C. § 405(g), for further proceedings consistent with this Memorandum-Decision and Order, and it is

**ORDERED**, that the Clerk enter judgment for **PLAINTIFF**.


Dated: September 8, 2022

Andrew T. Baxter
U.S. Magistrate Judge